UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DIANE E. DEWAR,
      - Plaintiff

   v.                             CIVIL NO. 3:08-CV-1620 (CFD)(TPS)

MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION
      - Defendant

## MAGISTRATE JUDGE'S OPINION

### I. Introduction

The plaintiff, Diane E. Dewar, brings this action pursuant to Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g). She seeks review of a final decision by the defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The plaintiff moves for an order reversing the Commissioner's decision or, in the alternative, for an order remanding her case to the Commissioner for a rehearing. (Dkt. #19.) The Commissioner opposes the plaintiff's motion and moves for an order affirming his decision. (Dkt. #23.) For the reasons set forth below, the plaintiff's motion for reversal or remand should be **DENIED**. (Dkt. # 19.) The defendant's motion to affirm should be **GRANTED**. (Dkt. # 23.)   28 U.S.C. §

636(b).

## II. Discussion

### A. Factual and Legal Background

The plaintiff alleges that she became disabled on December 20, 2001, due to a combination of impairments, including right knee and ankle pain, back pain, and inflammatory arthritis. (Pl.'s Mem. 1.) The plaintiff claims that her main impairment, however, is chronic mental illness. Id. On November 16, 2006, the plaintiff applied for SSI benefits, alleging a disability beginning on July 15, 2005. (R. at 126.)  On January 4, 2007, the Commissioner denied the plaintiff's application for benefits. (R. at 71-72.)  On February 14, 2007, the plaintiff requested that a federal reviewing official review the Commissioner's unfavorable decision, but the official found that she was not disabled. (R. at 79.)  On July 24, 2007, the plaintiff requested a hearing before an Administrative Law Judge ("ALJ").   (R. at 87.) On April 23, 2008, ALJ Deirdre R. Horton held a hearing, which consisted solely of the plaintiff's testimony.   (R. at 25.)   On June 26, 2008, the ALJ issued a decision in which she concluded that the plaintiff was not disabled.   On September 26, 2008, the Decision Review Board affirmed the ALJ's opinion.  (R. at 1-6.)  On November 29, 2009, the plaintiff filed the instant case.

### B. Legal Standard

The ALJ must apply a five-step sequential evaluation process

to each application for disability benefits.  See 20 C.F.R. §§ 404.1520, 416.920.  First, the ALJ determines whether the claimant is employed.  If the claimant is unemployed, the ALJ proceeds to the second step to determine whether the claimant has a severe impairment that prevents him from working.  If the claimant has a severe impairment, the ALJ proceeds to the third step to determine whether the impairment is equivalent to an impairment listed in 20 C.F.R. pt. 404, subpt. P, App. 1.  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.

If the claimant does not have a listed impairment, however, the ALJ proceeds to the fourth step to determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant cannot perform his past relevant work, the ALJ proceeds to the fifth step to determine whether the claimant can perform any other work available in the national economy in light of the claimant's RFC, age, education, and work experience.  The claimant is entitled to disability benefits only if he is unable to perform other such work.

The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based

on legal error . . . . Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008). As long as there is substantial support for the decision in the record, any evidence in the record which could have supported a different conclusion does not undermine the Commissioner's decision. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

### B. Summary of ALJ Horton's Decision

The ALJ found insufficient evidence that the plaintiff, who may have worked "under the table" as a bartender for several years during the period at issue, engaged in substantial gainful activity. (R. at 17.) The ALJ determined that the plaintiff had the severe impairment of a major depressive disorder, depressive type.[1] (R. at 19.) The ALJ concluded that the plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments. Id. The ALJ so concluded because the plaintiff did not satisfy the "paragraph B" criteria found in 20 C.F.R. Part 404, Subpart P, Appendix 1, at listing 12.04. Id. Specifically, the ALJ found that the plaintiff has no

---

[1] Here, the ALJ gave the plaintiff the benefit of the doubt. The federal reviewing officer who reviewed the Commissioner's initial unfavorable decision found that the plaintiff did not have an impairment that met the *de minimis* standard of severity under the regulations. The ALJ, however, considered the totality of the evidence of record and concluded that plaintiff does meet the applicable standard of severity. (R. at 19.)

restriction in daily living, and only mild difficulties in social functioning, concentration, persistence, or pace. Id. Furthermore, the plaintiff experienced no episodes of decompensation. Id. Since the plaintiff's mental impairment did not cause at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation, the paragraph B criteria were not satisfied. Id. The ALJ further found that the plaintiff did not satisfy the "paragraph C" criteria because the evidence of record failed to establish their presence. Id.

After examining the plaintiff's RFC, the ALJ found that although the plaintiff has no past relevant work, she does not have a physical impairment that would limit her ability to do other work. (R. at 19, 21.) Indeed, the ALJ found that the plaintiff can interact appropriately with others, is capable of understanding, remembering, and carrying out short and simple instructions, and is able to respond appropriately to normal changes within the workplace, as well as to workplace stressors. (R. at 21.) It is important to note, however, that the ALJ found that the plaintiff's mental impairment limits her to only occasional interaction with coworkers, supervisors, and the general public. (R. at 19.) Finally, after considering the plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (R. at 21-22.) Thus, the

ALJ concluded that the plaintiff was not disabled. (R. at 22.)

### C. Evidence Showing Mental Illness

The plaintiff argues that the record shows ample evidence of her mental illness. (Pl.'s Mem. 7.) The plaintiff cites the diagnosis by her treating physician, Dr. James Alexander, of "Major Depressive Disorder Bipolar, Depressed type," which is a listed disorder. Id. Dr. Alexander concluded, as the plaintiff points out, that this disorder prevents her from working. Id. Dr. Alexander further found that the plaintiff exhibits a "cyclical pattern" of recurring symptoms such as irritability, lack of focus, and low motivation. Id.; R. at 279. Regarding the plaintiff's mental RFC, Dr. Alexander found that the plaintiff is "moderately limited" in performing the following tasks:

1. Remembering locations and work-like procedures;
2. Understanding and remembering very short and simple instructions;
3. Understanding and remembering detailed instructions;
4. Carrying out detailed instructions;
5. Maintaining attention and concentration for extended periods;
6. Sustaining an ordinary routine without special supervision;
7. Making simple work-related decisions;
8. Asking simple questions or requesting assistance;
9. Maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness;
10. Being aware of normal hazards and taking appropriate precautions;
11. Traveling in unfamiliar places or using public transportation; and
12. Setting realistic goals or making plans independently of others.

(R. at 280-81.) By contrast, Dr. Alexander found that the

plaintiff is "markedly limited" in performing the following tasks:

1. Completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;
2. Interacting appropriately with the general public; and
3. Accepting instructions and responding appropriately to criticism from supervisors.

Id.  Finally, Dr. Alexander found that the plaintiff falls between "moderately limited" and "marked limited" in performing the following tasks:

1. Performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances;
2. Working in coordination with or proximity to others without being distracted by them;
3. Getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and
4. Responding appropriately to changes in the work setting.

Id.

Dr. Alexander did state that the plaintiff experienced "some relief" from her symptoms of depression and mood swings after taking her medications.  (R. at 279.)  He also stated that the plaintiff was no longer suicidal and did not experience any angry outbursts[2] "of a severe nature."  Id.  Dr. Alexander also noted

---

[2] When the plaintiff testified before the ALJ, she described having "angry outbursts" in which she became a "raging maniac." (R. at 59.)  She estimated that "a couple of times a month" she would have a "huge violent outbreak."  (R. at 59-60.)  At these times, the plaintiff would talk rudely, put people down, and blow things out of proportion.  (R. at 60.)  Three examples of such episodes include lashing out at her daughter for leaving a dirty

that the frequency of the plaintiff's cyclical pattern of mental issues is "difficult to discern" because it is "triggered by situational depressors" such as her miscarriage in March 2006. (R. at 208, 279.)

The plaintiff argues that the ALJ improperly rejected Dr. Alexander's findings without any contrary evidence, thereby inappropriately substituting her own judgment for that of the plaintiff's treating physician. (Pl.'s Mem. 8.) The plaintiff further argues that the Commissioner is not authorized to rely on the opinion of an ALJ to contradict the opinion of a treating physician. Id. (citing Pietrunti v. Director, Office of Workers' Compensation Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)).

In response, the Commissioner notes that Dr. Alexander was associated with two reports: a November 2006 report completed by the plaintiff's family therapist, Ms. Nancy Sadock, and co-signed by Dr. Alexander, and a December 2006 report completed by Dr. Alexander himself. (Def.'s Mem. 12.) The November 2006 report describes the plaintiff's marked functional limitations, while the December 2006 report describes the plaintiff's mild to moderate functional limitations. Id.; (R. at 208-11, 275-83). The ALJ's decision is premised more on the opinions Dr. Alexander expressed alone in his December 2006 report than on the opinions he expressed

---

glass in the sink, being arrested for breach of peace, and domestic disputes with her boyfriend. (R. at 60, 62.)

alongside Ms. Sadock in November 2006. (Def.'s Mem. 12.)

In assessing the plaintiff's RFC, the ALJ found that while the plaintiff suffers from a mental impairment that limits her to only occasional interaction with coworkers, supervisors, and the general public, she does not have a physical impairment that would limit her ability to work, since she is able to: (1) interact appropriately with others; (2) remember and carry out short, simple instructions; and (3) respond appropriately to normal changes within the workplace and workplace stressors. (R. at 19, 21.) This is supported by substantial evidence in the plaintiff's record; to wit, Dr. Alexander's own report from December 2006.

Simply stated, the ALJ assigned greater weight to Dr. Alexander's December 2006 report than to his November 2006 co-signed report with Ms. Sadock because the December report is consistent with the plaintiff's entire record of medical evidence. Id. at 12-13. In December 2006, Dr. Alexander noted that the plaintiff demonstrated good memory and attention (despite occasionally lacking concentration), normal speech characteristics, no hallucinations, delusions, or obsessions, and an adequately groomed general appearance. (R. at 208-09.) In addition, Dr. Alexander noted that the plaintiff has only a slight problem, or no problem at all, with personal hygiene, using good judgment regarding safety and dangerous circumstances, using adequate coping skills to meet the ordinary demands of a work environment,

interacting appropriately with others in a work environment, asking questions or requesting assistance, and getting along with others without distracting them or exhibiting behavioral extremes. (R. at 209-10.) Moreover, Dr. Alexander noted that the plaintiff has a slight problem, or no problem at all, in carrying out single-step and multi-step instructions, changing from one simple task to another, performing basic work activities at a reasonable pace, and focusing long enough to finish assigned simple activities or tasks. (R. at 210.) In fact, Dr. Alexander concluded on December 7, 2006, that the plaintiff demonstrated overall *slight improvement* since his last meeting with her on November 30, 2006. (R. at 208.)

In short, the ALJ's decision to credit Dr. Alexander's -- the plaintiff's treating physician -- December 2006 report is supported by substantial evidence. A reasonable mind might indeed accept Dr. Alexander's December 2006 report as adequate to support the ALJ's conclusion that the plaintiff is not disabled and is instead capable of performing work.

### D.   Weight Accorded Dr. Alexander's Opinion

The plaintiff next claims that the ALJ failed to accord due weight to the conclusion of her treating physician, Dr. Alexander. (Pl.'s Mem. 9.) The plaintiff, citing Rivera v. Schweiker, 717 F.2d 719, 720, 725 (2d Cir. 1983), argues that a treating physician's opinion as to disability is controlling if it is well supported by medically acceptable clinical diagnostic techniques,

and is not inconsistent with the other substantial evidence in the record.  The plaintiff emphasizes that this "Treating Physician Rule" is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time.  (Pl.'s Mem. 10.)

It is true that pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927(d), the opinion of a physician who has treated or examined the claimant is generally entitled to more weight than the opinion of a physician who has not treated or examined the claimant.  However, each of a treating physician's opinions is not always entitled to controlling weight.  Rather, the regulations explain that there are several factors to be considered in assigning weight to a medical opinion, such as the length, nature, and extent of the treating relationship, as well as whether the opinion is consistent with the entire record and supported by substantial evidence.

In the instant case, the ALJ assigned less weight to the November 2006 report, which Dr. Alexander merely co-signed with Ms. Sadock, because it was inconsistent with the record and not supported by substantial evidence.  For example, the November 2006 report showed that the plaintiff demonstrated a "markedly limited" ability to complete a normal workday and workweek without being interrupted by psychologically based symptoms.  (R. at 280.)  Yet the plaintiff was not fired from her bartending job in July 2005 because of any markedly limited ability to complete a normal

workday due to interruptions from psychological symptoms. Instead, she was fired because she simply failed to show up for work for seven days. (R. at 229.) Such an inconsistency demonstrates how the November 2006 report is not consistent with the plaintiff's record.

By comparison, the ALJ credited Dr. Alexander's December 2006 report because it is supported by substantial evidence. For example, Dr. Alexander's conclusion that the plaintiff has only a slight problem "using appropriate coping skills to meet the ordinary demands of a work environment" is consistent with the cyclical pattern of the plaintiff's depression. Indeed, as the Commissioner pointed out, the plaintiff is "only depressed when experiencing life stressors such as difficulty getting along with her daughter; troubles dealing with her boyfriends [sic] drinking and career choices; and an unfortunate miscarriage." (Def.'s Mem. 17; R. at 17, 21). The existence of this type of pattern -- which is supported by the plaintiff's regular reports of improved symptoms, mood stability, and help from medications -- is much more reflective of mild to moderate functional limitations, not marked functional limitations. In sum, the ALJ properly credited Dr. Alexander's December 2006 report over his co-signed November 2006 report because the December 2006 report was consistent with the record and supported by substantial evidence.

**E.   Credibility, Re-Contact, and SAGA**

The plaintiff has alleged three additional errors by the ALJ. First, the plaintiff argues that her testimony and complaints to her physician were consistent throughout more than four years. (Pl.'s Mem. 11.) Moreover, the plaintiff argues that the consistency of her own statements is a strong indication of her credibility, especially the complaints she made to her treating physician. Id. However, the plaintiff disclosed her Global Assessment of Functioning ("GAF") score of 40. Id. at 10. Such a low GAF score is consistent with severe mental illness. (Def.'s Mem. 17.) In her memorandum of law, however, the plaintiff neglected to mention that her GAF score fell between 52 and 60 in every other place throughout the record. Id.; (R. at 228-33, 235-40, 265). As the Commissioner aptly stated, these higher scores are "actually consistent with the moderate levels of functional limitation assessed in Dr. Alexander's December 2006 opinion – which the ALJ accorded significant weight in assessing Plaintiff's RFC."

This significant omission does not reflect well upon the consistency of the plaintiff's statements or her credibility. Her memorandum of law is plainly inconsistent with the medical evidence on record. Accordingly, contrary to what the plaintiff argues, the plaintiff's complaints are not an essential diagnostic tool. (Pl.'s Mem. 11, citing Brand v. Sec'y of the Dept. of Health, Educ. & Welfare, 623 F.2d 523, 526 (8th Cir. 1980)).

Second, the plaintiff argues that the ALJ should have sought additional information from a medical source if she felt that there was insufficient evidence to support the plaintiff's allegations. This is simply an incorrect statement of the law. An ALJ is only obligated to re-contact a treating source when a report from that source contains a conflict or ambiguity that must be resolved, does not contain necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. See 20 C.F.R. § 416.912(e)(1). In this case, however, there is no evidence to suggest that the ALJ possessed insufficient evidence to render a decision. Rather, it appears that Dr. Alexander had a thorough and complete medical history with which to analyze the plaintiff's claims. There was simply no need for the ALJ to seek "additional information or clarification from a medical source." (Pl.'s Mem. 12.)

Finally, the plaintiff argues that the finding of disability by the Connecticut Department of Social Services is an "important fact which should have been considered in Ms. Dewar's case." Id. There is absolutely no evidence that the ALJ failed to consider this finding of disability. In fact, the ALJ considered this finding in her opinion, and heard testimony about this finding from the plaintiff herself. (R. at 21, 50.) Accordingly, this argument is also without merit.

**III. Conclusion**

For the foregoing reasons, the magistrate judge recommends that the Commissioner's motion to affirm (dkt. #23) be **GRANTED,** and that the plaintiff's motion to reverse or remand (dkt. #19) be **DENIED.** Judgment should enter in favor of the defendant. Either party may timely seek review of this opinion and recommendation in accordance with Rule 72 (b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 72 (b). Failure to do so may bar further review. 28 U.S.C. § 636 (b)(1) (B); <u>Small v. Sec'y of Health & Human Services</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut, this 13th day of July, 2010.**

<u>**/s/ Thomas P. Smith**</u>
**Thomas P. Smith**
**United States Magistrate Judge**